Council for Appellant, if you'd make your appearance and proceed, please. Good morning, Your Honors. Good morning. I may please the Court. My name is Elizabeth Bixby, and I represent Plaintiff Appellant Logan Rowe. And before I begin, I'd like to reserve three minutes of my time for rebuttal. While Mr. Rowe was detained pre-trial at a Kansas detention center, a jail official spread a false rumor that Mr. Rowe was racist. In the jail context, spreading that kind of rumor is not only damaging, but downright dangerous. And indeed, that dangerous rumor led to Mr. Rowe being the victim of an attack and attempted sexual assault by two other detainees, during which time the detainees threatened to violently sexually assault Mr. Rowe with a broomstick and used racially charged language. Mr. Rowe was then completely denied, for two and a half months, mental health care for the debilitating PTSD he developed. PTSD so significant it caused him severe chest pain and tachycardia, caused him to develop psychosis and paranoia, and left him unable to sleep because he would lie in bed in fear, reliving the attack constantly throughout the day and night. Defendants denied Mr. Rowe his much-needed mental health care, despite him repeatedly requesting such care, including every time he saw the defendants at the pod door and informing defendants that his need for care was, quote, critical and desperate, and that he was in, quote, extreme emotional distress. And when he grieved those denials of care and then filed a complaint with an outside reporting agency when those grievances went nowhere, a jail official, Lieutenant Yoder, retaliated against him by throwing him in solitary confinement for two weeks and told the DA that Mr. Rowe was a troublemaker, leaving the DA to add criminal charges against him. The district court erred in dismissing all of Mr. Rowe's claims at the screening stage before defendants had even been served. And it further erred by adding an atextual, more than diminutive requirement to 1997 EE, and by finding that Mr. Rowe had not alleged any physical injury within the meaning of the statute, despite Mr. Rowe experiencing severe chest pains, being hit in the face by another detainee, and experiencing debilitating PTSD, which is a disease that causes tangible physical harm to the brain and the body. This is a very interesting case, and I have to figure out where to begin in addressing your many, your recitation of his allegations. Let me just begin with a more, a somewhat distinct point, and this relates to the state law claims. In the brief, there was reference, your brief, there was reference to the fact that the sole basis the district court used in rejecting the state law claims was that they couldn't be brought under 1983. As I read the district court's order, the district court called out Mr. Rowe for not addressing that contention. In other words, that contention was made, you can't go forward because it's 1983. Mr. Rowe didn't address that. I looked at the response, not much there. Why isn't that waiver? I mean, why do we even need to consider that issue now? Uh, so your honor is correct that the district court's sole basis was that state law claims can't be brought under 1983. No, that's not what I said, I said the sole basis was he didn't respond to the contention that they couldn't be brought under 1983. Well, so Mr. Rowe did not specifically address that, but I would posit to your honors that if, for example, defendants had been served and they had filed a motion to dismiss saying the reason that you should dismiss this claim is because you can't bring it under 1983, it would have been air for the district court to dismiss on that basis, even if Mr. Rowe did not file a response, because it's just a plain, you know, error of law. It is clear that, you know, these claims can be brought under the supplemental jurisdiction statute because they arise from a common nucleus of operative fact. We're called upon to reverse the district court. When we're called upon to reverse the district court, somebody should have told the district court that it was wrong, right? Well, I think the district court also has an obligation to be correct on the law. This wasn't a question, you know, that involved Mr. Rowe to say, to clarify something about the facts or the nature of his allegations. It was just, again, a very straightforward error of law. And again, Mr. Rowe below was a pro se incarcerated plaintiff. He specifically said that he did not have an obligation to address the allegations in the motion to show cause, right? The district court said you fail for X reason, and if you don't say not X, then there's a vacuum that is not being filled. Right? That is correct. Although, again, I would say that this is something that, you know, was not within sort of Mr. Rowe's specific knowledge. Again, like as opposed to something about the allegations, this was something that the district court, you know, itself should have known. And again, Mr. Rowe was a pro se, you know, incarcerated plaintiff below. He specifically alleged in his complaint and his responses that he did not have access to a law library and that he, you know, didn't have the resources. And so I do think it is in contradiction of this court's, you know, Hall v. Belmont and others where this court has said that a pro se plaintiff cannot be faulted for confusing various legal theories, for failing to cite- It was supposed to give the liberal in interpreting the pro se plaintiff's response. There was no response. So there was nothing to interpret. There's nothing to give liberal interpretation to. There was silence. Silence should be responded to as a positive averment. I don't think that's correct, especially with a pro se plaintiff. Again, it's not that just his response needs to be construed liberally. It's that his complaint also needs to be construed liberally. And by liberally construing his complaint, you know, it is, again, quite clear under the law that his claims were appropriately brought under the Supplemental Jurisdiction Statute. Okay, I've taken up enough time on that. Let me ask you a question about the physical injury requirement and specifically focusing on what is, at least some courts have called this a more than de minimis standard. Would you agree with me that really, at least based upon our Johnson decision, that we're not talking about is it more than a trifle? We're talking about is it serious? I mean, Johnson speaks about you may need to go to a doctor. It speaks about you need to make an inquiry into duration. It seems to me that the use of the more than de minimis language actually is more confusing than helpful. So what I'm saying is, do you agree that really what we're in is a zone of imposing a severity, a heightened severity standard on a physical injury requirement? I agree, Your Honor. That is what, you know, the circuits who have imposed this more than de minimis standard are sort of in the threshold of. And that's very similar to what the Supreme Court addressed in Muldrow, which we addressed in our 28J letter. You know, there it was a heightened severity or heightened threshold of harm for a Title VII statute. And, you know, the Supreme Court said, you can't impose this atextual extra requirement because doing so is to add words to the statute that Congress enacted and to impose an extra requirement on a plaintiff that statute does not require. OK, you anticipated my next question on Muldrow. That's good. But let's move on then to the question of what is it that is the alternative? In other words, what do you conceive to be the characteristics of a physical injury requirement that would be satisfied and as an example, I'll give an example that's appeared in the case law. Would it be enough that there is a paper cut? Would that be sufficient for a physical injury requirement? So I think that because it's an undefined term, I think the correct, you know, interpretation of it is to look at the ordinary public meaning at the time the PLRA was enacted. And that would be, you know, bodily harm or hurt. That would be what the blacks, you know, definition would be. And I think that's an appropriate definition. You know, I do think that technically a paper cut could count. But I think, you know, this court doesn't really need to reach that or be concerned about that because a paper cut claim is going to be screened out, you know, on the merits of the case. They would not be able to state an 8th Amendment claim just for a single paper cut. Whoa, whoa, whoa, no. I mean, that's dodging the issue. The issue is we have to decide what this means. We have to decide what the content of physical injury means. I can't push this down the road and say, oh, you know, it's going to be screened out. The question is, is it legally? You know, I don't care what happens, whether it gets screened out. Is it legally within the zone of what would be a physical injury for purposes of getting compensatory damages if you got across the finish line? That's the question that we're asked to ask, that is posed to us. And if I got to answer it, you got to answer it. Yes, no, understood, Your Honor. And so, yes, I would say that a paper cut would count. But if Your Honors were concerned about sort of the floodgates that that could open, you know, my responses to that would be that such claims would be screened out on the merits long before 1997 EE would do any work. Because, of course, this is a statute that only comes into play when it comes to determining what damages are appropriate. It doesn't prevent nominal or punitive damages. It doesn't prevent adjunctive relief or declaratory relief. And so, you know, you only really look to what work the statute does by the time you're at the damages, you know, determining what damages are appropriate. Bear with me a second. What I'm trying to anticipate is a decision tree if you win or if you lose on this issue. I'll give you the if you win our decision tree and you help me point, tell me where I'm wrong. What I would see that you would need to do is this. We would need to do or a court would need to do. One, analyze what legal claims actually are viable. Okay, first. Then we determine applying the physical injury requirement which ones would be eligible for compensatory damages or we would let the district court do that. And then we would proceed in that manner. In other words, no matter what happens, we have to look at these claims and say, what is the operative universe of claims that are going to be at issue here? In other words, did the district court err on these claims or did it not? And then we would look at the physical injury requirement, which, as I said, assumes that you've won on that, which means that there's a different operative lens. And we would either apply that lens ourself or we would remand to have the district court apply it. Does that make sense? Yes, I have no disagreement with that framework, Your Honor. Well, then the last part of that was an alternative, which was remand to the district court or apply that proper test ourselves. Which one do you think is most appropriate? I think this court does need to address the more than de minimis requirement because the district court, you know, did conclude that a more than de minimis injury is required. I also think this court needs to address the district court's belief that you can't have a physical injury that sort of stems from an emotional or mental injury. You know, I think... I am sorry, perhaps I wasn't clear. I understand that we need to look at the physical injury requirement as a matter of law and determine whether the court erred in that, determine whether PTSD perhaps is included. But my question, well, my question then is, as it relates to that universe of claims that we said are viable, should we go and look at them and apply that new test? In other words, should we say, okay, here's the test, that more than de minimis requirement is wrong. Here's the right test. And as it relates to the injuries that the plaintiff claims in these viable claims, you can get compensatory damages. Yes, I think given the sort of dearth of case law and sort of confusion in the district courts, I think it would be helpful for this court to sort of, you know, set out the correct legal framework and then address the injuries alleged here because the district court had already addressed them. But if this court preferred, you know, I think it could also just set out the appropriate legal framework, correct the district court's misunderstanding about PTSD, and then remand for the district court to reconsider the alleged injuries in light of the correct legal framework. And you're not complaining that the slap in the face was the physical injury, are you? I think that is a physical injury. I don't think that it is a more than de minimis physical injury, but I think- Because it was not raised in the district court. That's correct. I think, again, given that, you know, he was pro se below and, you know, what this court is required to do under Hall v. Belmont, I think, you know, this court should have taken that into account. And in fact, in the earlier stage, you know, did mention the slap, but did not consider it with analyzing 1987 EE. Counsel, can I ask about the PTSD and the physical injury inquiry? And the way I understand your argument is, you know, setting aside the de minimis aspect to it is that because Mr. Rowe suffered from chest pains and, you know, other changes to his bodily structure, like, you know, his brain structure, cellular structure, hormones change because that sort of manifests from PTSD, then that is the physical injury for purposes of the statute. First of all, do I have that part right? Yes, that's correct. Okay, so why wouldn't that be true of every DSM disorder that when it comes to changes in the brain structure and hormone levels that are symptomatic of the mental illness itself? In other words, if we were to say that were true, wouldn't every mental health disorder now fall under or sort of cast aside the statutory exception because you can prove that there are some physical changes that manifest as a result of the mental health disorder? You know, potentially, I just don't, I don't have that knowledge as to things like depression or anxiety. I think it's just very clear that as to PTSD, we have the sort of documented, you know, change to the brain, the atrophying of the brain, the change to the DNA, which accelerates cellular aging, which may lead to, you know, premature death and things like that. And then the chest pains, I would say, are a little bit of a separate thing. You know, the severe chest pains, this court has already held in MATA and CILAC that those can be a physical injury. And I don't know that... Yeah, but the chest pains in MATA came from a heart attack. That is correct. But this court was actually very clear to, you know, spell out or sort of separate the two because defendant's argument was that she had not alleged a physical injury because the heart attack, she couldn't show causation, that they sort of caused the heart attack. And they said, you know, short of the heart attack, she can't show that she suffered a physical injury. And this court said, no, the physical injury is the severe chest pain she suffered, you know, in sort of the lead up to the heart attack. It didn't say chest pain only counts when it's a result of, or when it's, you know, sort of a precursor to a heart attack. So in other words, you think we would narrow our analysis to PTSD only, and we shouldn't be worried about what I think could be an expansive reading of an opinion that would say, anytime you can show physical changes or manifestations that are symptoms of the mental health disorder, then this statutory exemption doesn't apply. Again, I just don't have that, you know, sort of knowledge as to when it comes to other mental health disorders. I just think PTSD, you know, there is sort of that clear scientific literature showing again, like the brain atrophy and things like that. But if this court, you know, was worried about that, it could, you know, leave for another day that question as it did in White and say that Mr. Rowe had sufficiently alleged physical injury based on the severe chest pains alone or based on the severe chest pains, as well as the slap to the face. And I see that my time has expired. Thank you, Your Honors. May it please the court. Your Honor, we're here about a case involving a fight over a remote that was swiftly broken up by prison officials and that this fight over a remote allegedly resulted in injuries such as a racing heart rate, anxiety, sweating palms, and a state of hypervigilance. And plaintiff is here claiming that those meet the specific physical injury requirement that Congress specifically enacted to limit the amount of frivolous claims regarding almost impossible to prove claims about emotional distress. I don't think it's that limited, counsel. I mean, he was diagnosed with PTSD by a mental health provider that the jail provided to him, right? That's the allegation. And we have to accept that it's true. We have to accept this. He has PTSD that he was diagnosed from a mental health provider and then given treatment, I think even medication for it. So I don't think this is just that he felt nervousness because of the incident. So I think that maybe understates a little bit what he's alleged, right? If you look at what's actually alleged in the amended complaint, those are the physical symptoms that he alleges. Chest pain, racing heart, anxiety, sweating palms, and a state of hypervigilance. And if you look at the appellant's brief, that's actually what's in their brief as well as the physical injuries they identify. No, it isn't. They list three injuries. They list the PTSD. They list the slapping. They list the chest pain. The slapping is listed in their appellant brief. So that's in there. They're claiming those three. Do you deny that those are in their brief? Those three are in their brief, Your Honor. But in addition to what I also said is in their brief as well. Well, you said only. Use the word only. Those things are in there. They're claiming that those physical injuries took place. And as it relates to the remote, the fight, as he alleges it, was because of the rumor about him being a racist. Was it not? It wasn't whether they could change and watch some different channel on TV. The factual allegations in the amended complaint are specifically that the fight arose when the other inmate, Mr. Cooks, requested that plaintiff provide him the remote. And when plaintiff refused, that is when the fight broke out. And does it not also speak to the notion that there was a rumor in the prison that he was a racist and his belief, at least certainly as litigated here, that the reason why the reaction to the remote was generated by that rumor? Your Honor, he may allege that as a conclusory that that was the cause. He alleges that. And if it is a fact, then we're supposed to accept these facts, well-pleaded facts, for purposes of our analysis, right? It doesn't help to put them aside or diminish them. Why don't you engage them? Your Honor, our position would be that that conclusory allegation that that was the cause is not consistent with the underlying facts that he alleged about the actual timeline. The initial alleged rumor was actually specifically communicated to Mr. Cooks. So you're saying general speculative allegations are insufficient? Yes, Your Honor. That's exactly what we're saying. And that if you look at the actual facts that are not just conclusory, not just his speculation, the actual facts are the alleged comment about the plaintiff being racist was made to Mr. Cooks. Mr. Cooks then informed the plaintiff. There were no issues alleged that day. There were no issues alleged in the week or two weeks up until the fight broke out. And then the facts are there was no animosity or issue until the issue with their remote arose. And in fact, most of the comments that were made, plaintiffs did not even allege that Mr. Cooks referenced the rumor. In fact, he referenced plaintiffs' alleged white friends, but he mostly referenced plaintiffs' alleged homosexuality. He referenced race though, right? He did reference race, Your Honor. OK. And to the extent that race would be rumor, I mean, is it not the case that supposedly the plaintiff and Mr. Cooks got along prior to the spreading of the rumor? Per the allegations. I believe that's true, Your Honor. But I also say that based off the facts as pled, they got along until the remote. And I understand this goes to just one argument of causation. In addition to all the physical injury, there's also the deliberate indifference piece of all this, which is none of the named defendants, it's only a defendant doe that's alleged to have made this comment to Mr. Cooks that allegedly created this rumor about plaintiff. Am I mistaken that the plaintiff supposedly told, I think certain jail officials, perhaps Lieutenant Yoder being among them, that he was concerned about the rumor and that he was concerned about the implications of that? Yes, he did tell the other named officers about that. But a lot of the arguments the plaintiff makes are about the starting of that rumor, creating the risk and references case lines about inmates being labeled snitches and how that can create a deliberate indifference. And I just wanted to point out that that was the reference, the allegations regarding that, which frankly appears to be most of what is in plaintiff's brief, is that that person that made that rumor, who's not even identified, should have known that this would happen. But that's not the standard under the deliberate indifference. Well, even putting that aside, focusing on the standard for deliberate indifference, if I go to you and I tell you that I'm concerned that there's a rumor out there, irrespective of who spread that rumor, but it was an official who spread it, though, that I was a racist, I'm concerned about how that impacts my safety. And you don't do anything about it. Why aren't we in the zone of deliberate indifference? And what is your response to that? My response would be, Your Honor, that it's not clear what, if anything, that plaintiffs allege that the defendant should have done. The claim that they did nothing isn't true because right after the slap, deputies were immediately in the room and broke up any further confrontation. And in fact, there's no allegation that there's been any other physical confrontation or any other physical harm that the plaintiff has suffered from another inmate due to this. So I don't... I apologize. Maybe I'm wrong then. I thought that there was a separate incident that occurred in the hallway when the plaintiff was with Cooks again, and he was attacked in 90 seconds, right? He was not physically attacked. He was just, I think, hostile words were exchanged. And again, those words were related to plaintiff's alleged homosexuality by Mr. Cooks. Obviously, we don't have a position on that. But again, that was 90 seconds. 90 seconds is a long time when somebody's coming after you, isn't it? It could be, but there's no evidence that there was actually any physical aggression or there's allegations. Well, it was just a threat, wasn't it? It was just a threat, Your Honor. And that arose out of, frankly, a mistake, but not a deliberate and different mistake. There was no... Any facts indicating that the officers were hoping that... knew that there was this risk and were hoping that something would happen or something along those lines. There were no facts. Is that what I understand you to be saying? There are no... That is our argument. There's no well-pleaded facts. I'm showing that that's plausible that there was a deliberate indifference to put those two together when they shouldn't have been. In fact, the short... How about the flag in the system that said they shouldn't be together? Why isn't that a fact? Because it's not only should the prison official known, it's did they actually know? That's the standard that's set forth in Farmer. Very clearly... I thought he said... I thought there were allegations that he did know that that flag was in there. I think there may be allegations that he should have been aware of it or that existed. But I think the other facts that it was only for a short time they reacted to it. They, in fact, apologized and said it was a mistake later. All that cuts strongly across any plausibility that this was an intentional decision that they acknowledged the risk and they accepted it. And again... If I may, let me focus on... Switch to the PLRA physical injury requirement argument. Mr. Rowe submitted the supplemental authority regarding Muldrow. And I want to understand your perspective on that supplemental authority in particular on the notion that at least one could argue that the more than de minimis standard putting aside questions about the language of that, the more than de minimis standard creates a severity add-on that is not in the text of the statute. And that Muldrow would tell us that such severity add-ons or significance add-ons are not appropriate. And they are not consistent with the appropriate interpretation of statutes. So the question is, putting a fine point on it, how does Muldrow inform our understanding of the PLRA and in particular the more than de minimis standard? I don't think it adds significantly. First of all, Muldrow, as the court's obviously aware, is a Title VII case. And the previous standard required a significant or substantial or something along those lines. All the courts that have applied the more than de minimis standard made clear that it's not requiring a significant injury or anything of that nature as was being required in Title VII context. And didn't we just say in Johnson in describing our prior case law that it included things that will require you to get a medical treatment? We need to do an inquiry into the duration of the harm. Those things seem pretty darn significant to me. I mean, tell me you mean that the more than de minimis standard has not correlated with significant injury? Is that your position? That would be my position, Your Honor. In fact, I believe if you look at the circuits that have looked at this, for example, the Harris, the 11th Circuit specifically said the physical injury must be more than de minimis but need not be significant. And how do you square that with the language in Johnson that describes what that prior case law says? And we're bound by Johnson. So in Johnson's interpretation of that case law, how do you square that conclusion that you've reached with the Johnson language? I believe that the Johnson language wasn't necessarily the Johnson language because the court found in Johnson that the standard had been met. I'm not sure how significant that portion of it was because the Johnson case, the court found pretty easily that even though it was not what I would consider or what the defendant argued were significant injuries, the court still found that it would have met the more than de minimis standard. So I think if you look at Johnson as a whole, I don't believe that necessarily controls. And I think those are things that the court just might look at when deciding if it's more than de minimis. And I go back to the definition of de minimis, which is more than trifling, more than trivial, of legal significance. This is not a... Okay, more than trifling. Well, a slap, which is one of the allegations here, do you believe that's trifling? No, I would, Your Honor, in this case, because there's no allegation that any injury actually resulted from that slap. Well, counsel, the slap was not raised in the district court, was it? It was not. In fact, the entire argument regarding the de minimis issue was not raised in the district court. In fact, the plaintiff went to great lengths to say that he had more than met the more than de minimis standard. In fact, he referenced it several times and never once indicated that he believed that a lesser showing would meet his requirement. So we do believe that argument has been waived to begin with. But going back to the issue of what does more than de minimis mean, I think the court has to look at the statute as a whole. Plaintiff wants to just focus on the physical injury, but that's not all the statute says. The statute specifically draws a distinction between physical injuries and mental or emotional injuries. And I think that when the courts have looked at this, they're trying to distinguish, OK, what's a physical injury and what's a mental injury? Because the line is not always clear. We talk about pain. Well, we all know about emotional pain, mental pain and physical pain. How do we draw that distinction? Well, we require there to be a more than de minimis, more than trivial, just legal significance, just something, not of a high burden, but just something to show that it's actually physical in nature. And is it your view that that's the way the courts have interpreted what more than de minimis means, that it just has to be something, something minor, more than minor? That would be my argument, Your Honor. I think that what the courts have looked at has been dry shave was one thing the court found. How about the bruised ear for three days in one of those cases? He had been injured and that's minor, is it? Your Honor, I think that might be right on the borderline. And I could certainly see arguments both ways. But in this case, there's nothing even arising to that. There's just pure allegations of pain. And if you look at the White case. Well, he claims that he was slapped and he claims that he had chest pain and he claims that there were physical, that he had PTSD. And we've had arguments that that causes harm. Let me ask you, though, quickly on this question of textualist interpretation. What do we do with the fact that there's another part of the PLRA that has the qualifier serious in it, serious physical injury? Well, Congress knows how to add the qualifier serious when it intends to do so. That qualifier doesn't exist in the portion that we're talking about, right? It does not, Your Honor. And what do we do with that? I think Your Honor can say that there's a significant and a gulf of difference, in fact, between a de minimis, more than de minimis, and significant. I think there's a, most injuries would probably fall within that gap. And I apologize, I'm out of time, Your Honor. No, thank you, counsel. Thank you. Thank you for your fine arguments. Case is submitted.